

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| YOLANDA WILHELM, ) | |
| ) | |
| Plaintiff, ) | Case No. 04 C 4272 |
| ) | |
| v. ) | Judge Ronald Guzman |
| ) | |
| THE CITY OF CALUMET CITY, ) | Magistrate Judge |
| ILLINOIS, a unit of Local Government, and ) | Martin C. Ashman |
| MICHELLE QUALKINBUSH, in her ) | |
| individual and official capacities as Mayor ) | |
| of the City of Calumet City, Illinois, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Yolanda Wilhelm moves to disqualify and strike the appearance of Defendant Michelle Qualkinbush's attorney Dana L. Kurtz, claiming that Kurtz's former association with Wilhelm's counsel Andreou & Casson, Ltd. creates an impermissible conflict of interest. Kurtz objects to Wilhelm's motion and argues that her former association with Andreou & Casson does not disqualify her from representing Qualkinbush in the current litigation. This matter comes before this Court pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 72.1. For the reasons that follow, the Court grants Wilhelm's motion and disqualifies Kurtz.

### I. Background

On August 6, 2002, Kurtz, an attorney licensed to practice law in the State of Illinois, became associated with the law firm of Andreou & Casson. From August 6, 2002 until

December 2002, Kurtz was one of three attorneys associated with Andreou & Casson–the other two attorneys being Frank J. Andreou and Luke A. Casson. (Casson Aff. ¶ 19.) A fourth attorney joined the firm in December 2002. (Id.)

In December 2002, Wilhelm became a client of Andreou & Casson. On December 11, 2002 and December 12, 2002, Wilhelm sought to retain Andreou & Casson in relation to employment discrimination she was experiencing based upon her national origin and political affiliation. (Casson Aff. ¶ 6; Wilhelm Aff. ¶ 3; Pl.'s Reply at 3.) An Andreou & Casson "New Case Assignment Form," dated December 13, 2002, indicates that Wilhelm was pursuing claims of employment and civil rights violations against Calumet City and Michelle Qualkinbush, in her capacity as Calumet City's city clerk. (Pl.'s Reply at Ex. B.) On December 24, 2002, Luke A. Casson wrote a letter on behalf of Wilhelm to the attorneys of Fioretti, Des Jardins and Reda, Ltd., who were representing Calumet City and Qualkinbush. (Pl.'s Reply at Ex. D; Kurtz's Sur-Reply at Ex. 4.) The December 24, 2002 letter clearly purports to represent Wilhelm and states that: (1) Wilhelm would not submit to an interview, (2) Wilhelm would not waive her rights to proceed with her claims in state or federal court, (3) Fioretti, Des Jardins and Reda, Ltd. may have a conflict of interest that prevents them from participating in the matter, and (4) Wilhelm would like to initiate settlement discussions. (Kurtz's Sur-Reply at Ex. 4.) Records and affidavits also indicate that Wilhelm paid Andreou & Casson at least a portion of her retainer in late 2002 and early 2003. (Andreou Aff. ¶ 14; Pl's Reply at Ex. G.) In her briefs, Kurtz repeatedly suggests that Wilhelm was not a client of Andreou & Casson prior to March 10, 2003. At oral argument, however, all parties finally agreed that Wilhelm was a client of Andreou & Casson as early as December 2002, while Kurtz was associated with the law firm. Kurtz

continues to claim, however, that she never actually knew that Wilhelm was a client of the firm before March 2003 and never had any knowledge of Wilhelm's claims against Calumet City and Qualkinbush. (Kurtz's Sur-Reply at 3-7.)

On January 13, 2003, Wilhelm filed an EEOC charge alleging employment discrimination by Calumet City and Qualkinbush, in her capacity as city clerk. (Pl.'s Reply at Ex. F.) Wilhelm claims that she ultimately decided not to prosecute the EEOC charge because of representations made to her by her attorneys. (Wilhelm Aff. ¶ 8.)

On March 10, 2003, Kurtz ceased to be associated with Andreou & Casson. The events surrounding that dissociation are the subject of a lawsuit pending in the Circuit Court of Cook County, Illinois and have infected this proceeding with hostility and ill-will.

In April 2003, Qualkinbush was elected mayor of Calumet City. Wilhelm alleges that a series of events which led to the basis of the current complaint before the Court began shortly after the April 2003 election. (Wilhelm Aff. ¶ 9.)

In June 2004, Wilhelm filed the complaint now before the Court, alleging discrimination and retaliation based on her sex, national origin and political affiliation by Calumet City and Qualkinbush, this time in her capacity as mayor. (Am. Compl. at 1-2.) On March 23, 2005, Kurtz was granted leave to file an appearance of counsel on behalf of Defendant Qualkinbush. On March 24, 2005, Wilhelm claimed that Kurtz was not permitted to appear on behalf of Qualkinbush due to conflicts of interest and moved to disqualify Kurtz. On April 29, 2005, this Court heard oral argument on the matter.

## II. Discussion

The Rules of Professional Conduct governing attorneys practicing law in the Northern District of Illinois were adopted by the District Court effective September 1, 1999. Wilhelm, citing to Local Rule 83.51.9 of the Local Rules of the Northern District of Illinois,[1] argues that Kurtz cannot represent Defendant Qualkinbush in the current matter without violating her duty of loyalty and confidentiality to a former client. (Pl.'s Reply at 4.)

Local Rule 83.51.9(b) states in relevant part:

> A lawyer shall not knowingly represent a person in the same or a substantially related matter in which the firm with which the lawyer formerly was associated had previously represented a client, (1) whose interests are materially adverse to that person, and (2) about whom the lawyer had acquired information protected by LR 83.51.6 and LR 83.51.9(c) that is material to the matter, unless the former client consents after disclosure.

Local Rule 83.51.6 protects a client's confidences or secrets during or after termination of the professional relationship. Local Rule 83.51.9(c) protects a former client's information when that information is not "generally known."

In the Seventh Circuit, a motion for disqualification of counsel is considered a drastic measure that interferes with an existing attorney-client relationship. *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721-22 (7th Cir. 1982). Courts are directed to view these motions with "extreme caution." *Id.* at 722. The moving party bears the burden of proving the facts necessary for disqualification. *Guillen v. City of Chicago*, 956 F. Supp. 1416, 1421 (N.D. Ill. 1997). Thus, Wilhelm has the burden of showing that disqualification is required.

---

[1] Wilhelm's motion cites to Rules 1.6, 1.7, 1.9, and 1.10 of the Illinois Rules of Professional Conduct, which correlate to Local Rules 83.51.6, 83.51.7, 83.51.9 and 83.51.10. (Pl.'s Br. at 4-6.) In her Reply Brief, Wilhelm cites directly to Local Rule 83.51.9 to support her arguments. (Pl.'s Reply at 4.)

In *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1266 (7th Cir. 1983), the Seventh Circuit stated:

> For rather obvious reasons a lawyer is prohibited from using confidential information that he has obtained from a client against that client on behalf of another one. But this prohibition has not seemed enough by itself to make clients feel secure about reposing confidences in lawyers, so a further prohibition has evolved: a lawyer may not represent an adversary of his former client if the subject matter of the two representations is "substantially related," which means: if the lawyer could have obtained confidential information in the first representation that would have been relevant in the second. It is irrelevant whether he actually obtained such information and used it against his former client, or whether--if the lawyer is a firm rather than an individual practitioner--different people in the firm handled the two matters and scrupulously avoided discussing them.

To determine whether the subject matter of the two representations is substantially related, the Court engages in a three-level inquiry. First, the Court makes a "factual reconstruction of the scope of the prior legal representation." *LaSalle Nat'l Bank v. County of Lake*, 703 F.2d 252, 255 (7th Cir. 1983). Next, the Court must determine "whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters." *Id.* at 255-56. This determination does not depend upon actual evidence showing that confidential information was shared--receipt of such information may be presumed. *Analytica, Inc.*, 708 F.2d at 1266; *LaSalle Nat'l Bank*, 703 F.2d at 256; *Safe-T-Products, Inc. v. Learning Res., Inc.*, No. 01 C 9498, 2002 WL 31386473, at *4 (N.D. Ill. Oct. 23, 2002). Finally, the Court must determine "whether that information is relevant to the issues raised in the litigation pending against the former client." *LaSalle Nat'l Bank*, 703 F.2d at 256. If the Court finds that a substantial relationship exists, we are entitled to presume that the attorney received confidential information during her prior representation. *Id.* The

presumption of shared confidences can be rebutted by "demonstrating that 'specific institutional mechanisms' (e.g., 'Chinese Walls') had been implemented to effectively insulate against any flow of confidential information from the 'infected' attorney to any other member of his present firm." *Schiessle v. Stephens*, 717 F.2d 417, 421 (7th Cir. 1983). *See also LaSalle Nat'l Bank*, 703 F.2d at 256; *Novo Terapeutisk Lab. A/S v. Baxter Travenol Labs., Inc.*, 607 F.2d 186, 197 (7th Cir. 1979). Doubts as to the existence of a conflict of interest should be resolved in favor of disqualification. *Novo Terapeutisk Lab. A/S*, 607 F.2d at 189-90.

### A. Scope of Prior Legal Representation

The scope of Andreou & Casson's prior legal representation of Wilhelm included claims against Calumet City and Qualkinbush, in her capacity as city clerk, for employment discrimination based upon sex, national origin and political affiliation. In December 2002, Wilhelm sought to retain Andreou & Casson in relation to employment discrimination. As mentioned above, Andreou & Casson wrote at least one letter to Calumet City and Qualkinbush on Wilhelm's behalf, setting out her legal position and her openness to settlement negotiations. On January 13, 2003, following the advice of Andreou & Casson, Wilhelm filed a charge of discrimination with the EEOC and Illinois Department of Human Rights. (Pl.'s Reply at Ex. F.) In the January 2003 charge, Wilhelm accused Qualkinbush and Calumet City of ongoing harassment and discrimination based on her Mexican national origin, beginning in July 2002. (Id.) While Andreou & Casson were representing her in this matter, Wilhelm advised the firm of potential sources of information, grievances filed with her union (Teamsters Local 726) and documents relating to her employment. (Casson Aff. ¶¶ 7, 11; Wilhelm Aff. ¶¶ 4-5.) Documents

turned over to the firm included, among other things: Wilhelm's personal notes on her workplace conditions dating back to May 2002, which describe instances of harassment and discrimination based on sex, national origin and political affiliation; documentation from her union grievance, including the names of fourteen potential witnesses; and a report on the union's investigation and rejection of her claim. (Casson Aff. ¶¶ 7, 11; Wilhelm Aff. ¶¶ 4-5; Pl.'s Reply at Ex. D.) Wilhelm ultimately decided not to prosecute the EEOC charge in light of representations made to her by the attorneys of Andreou & Casson. (Casson Aff. ¶ 9; Wilhelm Aff. ¶ 8.) These facts convince the Court that the scope of the prior representation by Andreou & Casson included allegations by Wilhelm of sex, national origin and political association discrimination against her supervisor, then City Clerk Qualkinbush, and Calumet City based on events occurring between May 2002 and March or April 2003.

### B. Reasonable To Infer Sharing of Confidential Information

The Court must determine if it is reasonable to infer that the confidential information allegedly given by Wilhelm to Andreou & Casson would have been given to a lawyer representing a client in an employment discrimination matter. Wilhelm alleges that confidential information given to her attorneys in late 2002 and early 2003 included the strengths and weaknesses of her claims, her credibility, her financial situation, her psychological condition, her impressions of witnesses, the firm's litigation strategy, and Wilhelm's and the firm's sources of information and contacts within Calumet City offices. (Wilhelm Aff. ¶¶ 3-6, 8; Pl.'s Br. at 2.) Attorneys Luke A. Casson and Frank J. Andreou claim that they received and discussed these confidences, (Andreou Aff. ¶ 12; Casson Aff. ¶¶ 6-8, 11), and the Court finds it reasonable to

turned over to the firm included, among other things: Wilhelm's personal notes on her workplace conditions dating back to May 2002, which describe instances of harassment and discrimination based on sex, national origin and political affiliation; documentation from her union grievance, including the names of fourteen potential witnesses; and a report on the union's investigation and rejection of her claim. (Casson Aff. ¶¶ 7, 11; Wilhelm Aff. ¶¶ 4-5; Pl.'s Reply at Ex. D.) Wilhelm ultimately decided not to prosecute the EEOC charge in light of representations made to her by the attorneys of Andreou & Casson. (Casson Aff. ¶ 9; Wilhelm Aff. ¶ 8.) These facts convince the Court that the scope of the prior representation by Andreou & Casson included allegations by Wilhelm of sex, national origin and political association discrimination against her supervisor, then City Clerk Qualkinbush, and Calumet City based on events occurring between May 2002 and March or April 2003.

### B. Reasonable To Infer Sharing of Confidential Information

The Court must determine if it is reasonable to infer that the confidential information allegedly given by Wilhelm to Andreou & Casson would have been given to a lawyer representing a client in an employment discrimination matter. Wilhelm alleges that confidential information given to her attorneys in late 2002 and early 2003 included the strengths and weaknesses of her claims, her credibility, her financial situation, her psychological condition, her impressions of witnesses, the firm's litigation strategy, and Wilhelm's and the firm's sources of information and contacts within Calumet City offices. (Wilhelm Aff. ¶¶ 3-6, 8; Pl.'s Br. at 2.) Attorneys Luke A. Casson and Frank J. Andreou claim that they received and discussed these confidences, (Andreou Aff. ¶ 12; Casson Aff. ¶¶ 6-8, 11), and the Court finds it reasonable to

assume that such confidential information was shared in advance of the December 24, 2002 letter and the firm's recommendation that Wilhelm not pursue her EEOC charge.

Kurtz was a member of Andreou & Casson until March 10, 2003, so the Court presumes that Kurtz received Wilhelm's confidential information. *See Analytica, Inc.*, 708 F.2d at 1266 (presume information was shared even where members of firm handle cases separately and scrupulously avoid sharing information); *Schloetter v. Railoc of Ind., Inc.*, 546 F.2d 706, 710 (7th Cir. 1976) (confidential information presumptively possessed by attorney is imputed to other members of his law firm and may result in their disqualification regardless of whether they were actually exposed to such confidences). The facts strongly support this presumption, as all parties acknowledged at oral argument that: (1) between August 2002 and March 2003 the three (and later four) attorneys of Andreou & Casson held weekly meetings to discuss current and prospective clients; (2) Andreou & Casson was an informal law firm where cases were often discussed outside of the weekly meetings; (3) no effort was made at Andreou & Casson to screen attorneys from cases or monitor file or case sharing; and (4) Kurtz's practice area at Andreou & Casson included employment and civil rights discrimination. Affidavits submitted to the Court further reinforce these statements. (Andreou Aff. ¶¶ 9-11; Casson Aff. ¶¶ 8, 12-14, 20-22.) Given that Wilhelm's confidences and secrets were likely shared with the attorneys at Andreou & Casson, and given the informal structure of the law firm, as well as Kurtz's specialization in employment and civil rights discrimination suits, the Court finds it reasonable to infer that Kurtz would be given confidential information in this case.[2]

---

[2] That Kurtz is currently in possession of electronic copies of all of Andreou & Casson's files is not determinative of the shared confidences issue but only strengthens the reasonableness (continued...)

C.  **Shared Information is Relevant To Current Litigation.**

At level three of the inquiry, the Court must determine whether Wilhelm's shared confidences and secrets are relevant to the current litigation. Kurtz argues that confidences shared in the original case are not relevant to the current litigation because (1) all of Wilhelm's current allegations post-date September 2003, (2) Qualkinbush was serving as city clerk and not mayor prior to September 2003 and (3) Wilhelm waived her previous claims when she chose not to pursue her 2003 EEOC charge. (Kurtz's Resp. at 6-7.) The Court disagrees with Kurtz's analysis.

Wilhelm's confidential information is relevant to the current litigation because her current complaint once again alleges sex, national origin and political discrimination by the identical defendants and even references and incorporates her original allegations from 2002 and 2003. In December 2002 and January 2003, Wilhelm alleged that Calumet City and Qualkinbush, in her capacity as city clerk, discriminated against her on the basis of her national origin and political affiliation. (Wilhelm Aff. ¶¶ 3-9; Pl.'s Reply at Ex. F.) Also in December 2002 and January 2003, Wilhelm gave Andreou & Casson copies of her personal notes, which describe instances of harassment and discrimination based on sex, national origin and political affiliation dating back to May 2002. (Pl.'s Reply at Ex. D.) In the case at bar, Wilhelm alleges that Calumet City and Qualkinbush, in her capacity as mayor, discriminated against her on the basis of sex, national origin and political affiliation. (Am. Compl. at 1-3.) While the current complaint is based largely on events that occurred during and after November 2003, eight months after Kurtz

---

[2](...continued)
of the Court's inference.

dissociated from Andreou & Casson, the current complaint clearly relates to and incorporates pre-March 2003 events. Specifically, the current complaint: (1) focuses on Wilhelm's decision not to support Qualkinbush's bid for mayor, dating back to late 2002; (2) alleges in both Count IV and V that all defendants violated Wilhelm's First Amendment right to freedom of speech and freedom of association when they demoted her for "her refusal to support Qualkinbush in her election campaign for Mayor . . ."; and (3) claims in all six counts that "Defendants have a policy and custom of allowing and condoning discrimination, failing to respond to complaints, and retaliating against those who complain about unlawful conduct and do not contribute funds or support candidates for elected office." (Am. Compl. at 4, 8, 13, 15.) As Qualkinbush's first election campaign for mayor ended in April 2003 and a policy or custom of discrimination could easily relate back to the events surrounding Wilhelm's 2002-2003 claims, the current complaint may incorporate events relevant to Wilhelm's original case that pre-date Kurtz's disassociation from Andreou & Casson, thereby making previously shared confidences and secrets potentially relevant to the current litigation. The fact that Kurtz admitted at oral argument to deposing Wilhelm on events and claims from 2002 and 2003 further strengthens this relationship.

The three-level inquiry establishes that Andreou & Casson's current and previous representations of Wilhelm are substantially related so the Court presumes that Kurtz shared in relevant confidential information while associated with Andreou & Casson.

### D. Presumption Not Rebutted

The Court must determine whether Kurtz successfully rebuts the presumption of shared confidences. Such a determination can be based on objective and verifiable evidence presented

to the Court and must be made on a case-by-case basis. *Schiessle*, 717 F.2d at 421. Objective and verifiable evidence may include the size and structural divisions of the law firm, the likelihood of contact between the "infected" attorney and the specific attorneys involved in the current litigation, or rules that monitor and restrict sharing of files and information about cases. *Id.*; *LaSalle Nat'l Bank*, 703 F.2d at 259.

Kurtz fails to rebut the presumption of shared confidences. Kurtz argues that she was never actually aware that Wilhelm was a client of the firm and that Wilhelm produces no evidence to the contrary. Kurtz claims that she recorded the name of every client or case she discussed when she worked at Andreou & Casson but can find no mention of Wilhelm in her records. Kurtz finds it significant that Wilhelm produces detailed minutes from law firm meetings in October and November 2002, but no post-November 2002 minutes (and therefore no minutes discussing Wilhelm). Kurtz's arguments are not enough. From December 2002 to March 2003, Andreou & Casson was an association of four lawyers. At oral argument, all parties agreed that there were no structural divisions in the firm or monitoring rules that would prevent an "infected" attorney from interacting and discussing Wilhelm's case with Kurtz. Furthermore, the firm did not establish rules that would monitor or restrict the sharing of files and information about cases. In short, there is no evidence of any screening or protective measures being discussed or implemented at Andreou & Casson and, at the time that Kurtz was associated with the firm, there was no reason to screen Kurtz from Wilhelm's case or files. Given the presumption of shared confidences resulting from the complete lack of formal screening at Andreou & Casson, Kurtz has the burden of showing that she did not share in the confidences of

an Andreou & Casson client and she cannot carry this burden by merely highlighting Wilhelm's lack of explicit evidence. It follows that the presumption of shared confidences is not rebutted.

### III. Conclusion

For the aforementioned reasons, the Court grants Wilhelm's motion to disqualify and strike the appearance of attorney Dana L. Kurtz.

**ENTER ORDER:**

*[signature]*
**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: May 11, 2005.

Copies have been mailed to:

| | |
|---|---|
| LUKE A. CASSON, Esq.<br>Andreou & Casson<br>332 South Michigan Avenue<br>Suite 1144<br>Chicago, IL  60604 | BURTON ODELSON, Esq.<br>MARK H. STERK, Esq.<br>MICHAEL R. GIBSON, Esq.<br>Odelson & Sterk, Ltd.<br>3318 West 95th Street<br>Evergreen Park, IL  60805<br><br>DANA L. KURTZ, Esq.<br>Kurtz Law Offices, L.L.C.<br>414 South State Street<br>Lockport, IL  60441 |
| Attorney for Plaintiff | Attorneys for Defendants |