# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| YOLANDA WILHELM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 4272 |
| | ) | |
| THE CITY OF CALUMET CITY, | ) | Judge Ronald A. Guzmán |
| ILLINOIS, a unit of local government, | ) | |
| and MICHELLE QUALKINBUSH, | ) | |
| in her individual and official capacities | ) | |
| as Mayor of the City of Calumet City, | ) | |
| Illinois, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Yolanda Wilhelm has sued defendants the City of Calumet City, Illinois ("the City") and its Mayor, Michelle Qualkinbush, for their alleged violations of Title VII, 42 U.S.C. § 2000e *et seq.*, and her First Amendment rights.[1] The case is before the Court on defendants' Federal Rule of Civil Procedure ("Rule") 56 motion for summary judgment, plaintiff's motion to strike defendants' LR 56.1(a) Statement and defendants' motion to strike portions of plaintiff's LR 56.1(b) Statement. For the reasons provided in this Memorandum Opinion and Order, the motions to strike are stricken as moot and defendants' motion for summary judgment is granted in part and denied in part.

---

[1] Plaintiff sues Qualkinbush in both her individual and her official capacities. The official capacity claims are redundant of the claims asserted against the City. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . represent only another way of pleading an action against an entity of which an officer is an agent." (quotation omitted)). Therefore, the Court dismisses them.

## Motions to Strike

In their motions to strike, the parties ask the Court to strike various asserted facts or denials from their opponent's LR 56.1 Statements because they are unsupported or otherwise improper. The Court did not rely on any statements or denials of either party that did not comport with Local Rule 56.1. The motions to strike are, therefore, moot.

## Motion for Summary Judgment

### Facts[2]

Plaintiff, a Hispanic woman, was hired as a legislative clerk in the City Clerk's Office on November 1, 1999. (Def.'s LR 56.1(a) Stmt. ¶¶ 11-12.) Plaintiff's employment was governed by a collective bargaining agreement ("CBA") between the City and the Teamsters. (*See* Materials Supp. Defs.' Mot. Summ. J., Ex. J, CBA.) When plaintiff was hired, her supervisor was then-City Clerk Qualkinbush. (Defs.' LR 56.1(a) Stmt. ¶ 16.)

In 2002, the City's Mayor, Jerome Genova, resigned. (*Id.* ¶ 18.) The City Council appointed Dominick Gigliotti to complete a portion of Mayor Genova's unexpired term. (*Id.*)

Sometime thereafter, Qualkinbush decided to run for mayor and asked plaintiff for her support. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 12.)[3] Qualkinbush told plaintiff that she could not remain

---

[2] Unless otherwise noted, the following facts are undisputed.

[3] Defendants deny this fact statement, but they do so without any citation to the record. They are, therefore, deemed to have admitted it. *See* LR 56.1(a).

2

in the legislative clerk position if her support was not forthcoming. (*Id.*)[4] Plaintiff did not support Qualkinbush's campaign. (*Id.* ¶¶ 8-10.)

In April 2003, Qualkinbush was elected mayor. (Def's LR 56.1(a) Stmt. ¶ 21.) The same month, plaintiff told Qualkinbush that she was pregnant and would take maternity leave when the baby was born. (*Id.* ¶ 20.) Qualkinbush agreed to the leave and told plaintiff that City policy would govern it. (*Id.*)

In September 2003, the City Council passed an ordinance consolidating the positions of Director of Health and Director of Youth and Family Services. (*Id.* ¶ 50.) At the time, both positions were filled. (*Id.*)

Qualkinbush's election as mayor left the City Clerk position vacant. In November 2003, plaintiff says, Qualkinbush told her she would not be appointed City Clerk because she was not black and because she had not supported Qualkinbush's bid for mayor. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 17, 39-40.) On November 13, 2003, Qualkinbush recommended, and the City Council approved, the appointment of Gloria Dooley, an African American, to be City Clerk. (Def.'s LR 56.1(a) Stmt. ¶ 24; Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 24.)

According to plaintiff, after Qualkinbush told her she would not be made City Clerk, Qualkinbush promised to appoint her to the newly-created position of Director of Health and Youth and Family Services. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 18.) Qualkinbush did not, however, appoint

---

[4] *See* n.3.

3

plaintiff, or anyone else, to that position, which remains vacant today. (Def.'s LR 56.1(a) Stmt. ¶ 53.)

On November 25, 2003, Dooley told plaintiff that a number of City jobs were going to be eliminated for financial reasons. (*Id.* ¶ 26; Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 26.) One of those positions was the legislative clerk job held by plaintiff. (*Id.*) Dooley told plaintiff that she would be transferred to the position of cashier, at the same rate of pay. (*Id.*)

Though defendants deny it, plaintiff says that Dooley told her two days later that she would not be appointed to the director job because of her pregnancy. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 22.)

On January 3, 2004, plaintiff filed an EEOC charge alleging that she was stripped of the legislative clerk position denied the director job in retaliation for a January 3, 2003 employment discrimination charge she had filed and because of her pregnancy. (*See* Pl.'s Exs. Supp. Resp. Defs.' Mot. Summ. J., Ex. 2, 1/3/04 EEOC Charge.)

Plaintiff took maternity leave from January 14 through April 5, 2004. (Def.'s LR 56.1(a) Stmt. ¶ 27.)

On June 25, 2004, plaintiff filed this suit.

On July 12, 2004, plaintiff filed an EEOC charge alleging that she was removed from the legislative clerk position and denied the director job because of her national origin. (*See* Pl.'s Exs. Supp. Resp. Defs.' Mot. Summ. J., Ex. 1, 7/12/04 EEOC Charge.)

On October 20, 2004, the City terminated plaintiff from the cashier job because she was no longer a City resident. (Materials Supp. Defs.' Mot. Summ. J., Ex. B, Minutes City Council Meeting of 10/20/04.)

## Discussion

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

## Title VII

In Counts I, II and VI of her first amended complaint, plaintiff alleges that the City abolished the legislative clerk position and denied her the City Clerk and Director of Health, Youth and Family Services jobs because of her sex, national origin and in retaliation for her complaints of discrimination in violation of Title VII.[5] The City's only argument for judgment on these claims is that plaintiff failed to grieve them pursuant to the CBA before filing this suit. It is well settled,

---

[5]In her fact statement, plaintiff says she suffered sexual harassment as well. (*See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 35.) Because plaintiff did not raise this claim before the EEOC, she cannot raise it now. *See Cheek v. W. & So. Life Ins. Co.*, 31 F.3d 497, 503 (7th Cir. 1994) (holding that sexual harassment claim could not be raised in lawsuit based on EEOC charge alleging sex discrimination because a claim of harassment "cannot be reasonably inferred from . . . an EEOC charge of sexual discrimination").

however, that a Title VII plaintiff need not exhaust contractual remedies before filing suit. *See Waters v. Wis. Steel Works of Int'l Harvester Co.*, 502 F.2d 1309, 1316 (7th Cir. 1974). Thus, the City's motion for summary judgment on Counts I, II and VI is denied.

## Section 1983

In Counts III-V, plaintiff asserts claims pursuant to 42 U.S.C. § ("section") 1983 against both defendants for violating her First Amendment rights by denying her the Clerk and director positions, abolishing the legislative clerk position and harassing her because of her political beliefs and her complaints of discrimination. We will start with the harassment claim.

Plaintiff alleges that Qualkinbush harassed her by: (1) falsely accusing her of having an affair with an alderman; (2) threatening to fire her for cooperating with a federal investigation; and (3) trying to transfer or fire her after she caught Qualkinbush rigging the bids for a tree removal contract. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 34, 36, 41.)[6] Even if these allegations are true, and we must assume that they are, two unfulfilled threats and a false accusation occurring over an unspecified period of time do not constitute harassment severe enough to be actionable. *Cf. Herrnreiter v. Chi. Housing Auth.*, 315 F.3d 742, 745 (7th Cir. 2002) (stating, in the context of Title

---

[6]Plaintiff also says that Qualkinbush retaliated against her by telling other City officials not to trust her or her family. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 41.) Plaintiff relies only on her own deposition testimony to support this assertion. (*See id.*) Her testimony does not, however, identify when Qualkinbush made the alleged statements, to whom she made them or how plaintiff learned about them. (Materials Supp. Defs.' Mot. Summ. J., Ex. G, Qualkinbush Dep. at 175-76.) Because plaintiff has not demonstrated that she is competent to testify about Qualkinbush's alleged statements, the Court will not consider them.

6

VII, that an actionable adverse action "includes . . . harassment . . . that is sufficiently severe to worsen substantially [the] conditions of [the plaintiff's] employment as they would be perceived by a reasonable person in the [plaintiff's] position."). Defendants' motion for summary judgment on plaintiff's claims that they violated her First Amendment rights by harassing her for her speech and political beliefs is granted.

The next hurdle plaintiff faces concerns her claims against the City. The City can only be held liable under section 1983 if one of its policies caused plaintiff's alleged injuries. *See Cornfield ex rel. Lewis v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1324 (7th Cir. 1993) ("[M]unicipalities . . . may not be held liable under section 1983" unless "execution of a government's policy or custom . . . inflicts the injury [for which] the government as an entity is responsible under § 1983." (quotation omitted)). In this context, the term policy means an express policy, a practice so widespread and permanent that it constitutes a *de facto* policy or action by a person with final policy-making authority. *Baxter ex rel. Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 734-35 (7th Cir. 1994). State law determines who is a policy-maker for section 1983 purposes. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).

There is no dispute that Qualkinbush recommended, and the City Council approved, Dooley's appointment to the City Clerk position. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 24.) Under Illinois law, authority to fill a vacancy in the City Clerk position, which occurred when Clerk Qualkinbush became Mayor Qualkinbush, is vested in "the mayor with the advice and consent of the city council." *See* 65 ILL. COMP. STAT. § 5/3.1-20-5. Given that statute, the Court holds that the decision to appoint Dooley City Clerk was made by a City policy-maker.

7

Plaintiff asserts that Qualkinbush made the decision not to appoint her to the director job. (Materials Supp. Defs.' Mot. Summ. J., Ex. D, Wilhelm Dep. at 56.) Both Illinois law and the City's Municipal Code vest Mayor Qualkinbush, with the advice and consent of the City Council, with the authority to appoint subordinate municipal officers. *See* 65 ILL. COMP. STAT. § 5/3.1-30-5(a); CALUMET CITY, ILL., MUN. CODE ch. 2, art. II, § 33 (2004) (hereafter "CODE").[7] Accordingly, Qualkinbush was acting as a final policy-maker when she declined to appoint plaintiff to the director position.

The parties dispute whether it was Dooley or Qualkinbush who made the decision to abolish the legislative clerk position and assign plaintiff to the cashier position. (*Compare* Materials Supp. Defs.' Mot. Summ. J., Ex. F, Dooley Dep. at 62, 66-68 (stating that Qualkinbush instructed Dooley to eliminate one job from the Clerk's Office and Dooley chose the legislative clerk position) *with* Materials Supp. Defs.' Mot. Summ. J., Ex. D, Wilhelm Dep. at 234 (stating that Dooley told plaintiff Qualkinbush made the decision[8]).) For the purposes of this motion, we must credit plaintiff's assertion that Qualkinbush was the decision-maker. The Calumet City Code gives the mayor "supervision over all of the executive officers and employees of the city." CODE ch. 2, art. II, § 2-32. Thus, Qualkinbush was a policy-maker with respect to the decision to abolish the legislative clerk position.

---

[7]The City did not cite to the Code in its briefs or provide any portion of it to the Court. The Court obtained the cited Code provisions from the Internet. *See* http://library.municode.com.

[8]Defendants did not object to plaintiff's reliance on this alleged statement, *see* Defs.' Resp. Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 44, which, in any event, can be construed as an admission. *See* FED. R. EVID. 801(d)(2).

8

In short, the Court concludes that City policy-makers made the decisions plaintiff contests. Thus, the City is not entitled to judgment on the section 1983 claims on the grounds that her alleged injuries were not inflicted by one of its policies.

**Speech**

To defeat defendants' motion on her claims that she was denied jobs because of her complaints of discrimination, plaintiff must show that (1) she engaged in constitutionally-protected speech, (2) her speech was a motivating factor in the actions she contests, and (3) those actions would not have occurred absent her speech. *Cygan v. Wis. Dep't of Corr.*, 388 F.3d 1092, 1098 (7th Cir. 2004). Speech is constitutionally protected if it is on a matter of public concern and the employee's interest in commenting on the issue outweighs the employer's interest in providing efficient public services. *Id.* at 1099. To determine whether speech addresses a matter of public concern, "we consider the content, form, and context of a given statement, as revealed by the whole record" as well as the "employee's choice of forum and motivation for speaking." *Id.* (quotation omitted). "At bottom, we must decide whether the speech is most accurately characterized as an employee grievance, or as a matter of political, social, or other concern to the community." *Id.*

Plaintiff says the speech for which suffered was her complaints to the EEOC about discrimination. (First Am. Compl., Count III ¶ 2.) The existence of discrimination in City government may be a subject of interest to the public, but "the fact that an employee speaks up on a topic that may be deemed . . . of public import does not automatically render her remarks . . . protected." *Cliff v. Bd. of Sch. Comm'rs of City of Indianapolis*, 42 F.3d 403, 410 (7th Cir. 1994)

(quotation omitted). "If the speech concerns a subject of public interest but the *expression* addresses only the personal effect upon the employee, then as a matter of law the speech is not of public concern." *Marshall v. Porter County Plan Comm'n*, 32 F.3d 1215, 1219 (7th Cir. 1994) (emphasis in original).

Plaintiff's EEOC charges address the alleged discrimination in purely personal terms. In her first charge, plaintiff says that she was not given the director job and lost the legislative clerk position because of her pregnancy. (*See* Pl.'s Exs. Supp. Resp. Defs.' Mot. Summ. J., Ex. 2, 1/3/04 EEOC Charge.) Her second charge says those decisions were motivated by her national origin. (*See id.*, Ex. 1, 7/12/04 EEOC Charge.) Neither charge says anything about other employees or alleges that the City has a pattern or practice of national origin or sex discrimination. Moreover, plaintiff has offered no evidence to suggest that her complaints were motivated by concern for anything but her own employment situation. Because the EEOC charges were an expression of plaintiff's personal grievances against the City, they are not speech on a matter of public concern. *See Brown v. Ill. Dep't of Pub. Aid*, 318 F. Supp. 2d 696, 699 (N.D. Ill. 2004) (holding that EEOC charges "touched on a private, not public, matter" because they "complain[ed] of discrimination specific to [plaintiff]" not about "systematic discrimination against a class of employees"), *aff'd*, 132 Fed. Appx. 51 (2005); *Figueroa v. City of Chi.*, No. 97 C 8861, 1999 WL 163022, at *9 (N.D. Ill. Mar. 12, 1999) (holding that EEOC charge alleging sexual harassment was not speech on a matter of public concern because it "only related to the resolution of a personal problem" (quotation omitted)). Defendants are, therefore, entitled to judgment as matter of law on plaintiff's section 1983 claims

that they denied her the Clerk and director jobs and abolished the legislative clerk position because she complained about discrimination.

## Political Association

Alternatively, plaintiff alleges that defendants made the contested decisions because she did not support Qualkinbush's candidacy for mayor. Even if that were true, defendants say, it would not matter because Qualkinbush was legally permitted to consider political affiliation when she filled these positions. As a general rule, "public employees may not be made to suffer adverse job actions because of their political beliefs." *Carlson v. Gorecki*, 374 F.3d 461, 464 (7th Cir. 2004). If, however, the officeholder can effectively perform the job only if she holds certain political beliefs, the pubic employer may consider those beliefs in making its employment decisions. *Id.* "Whether party affiliation is an appropriate requirement for performance of the job is determined by a functional test that examines the powers and duties inherent in the position" by considering "both the historical treatment of the position and the actual work performed by the people who hold [it]." *Id.* at 464-65. A public employee is not protected by the First Amendment if her position "authorizes, either directly or indirectly, meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation." *Tomczak v. City of Chi.*, 765 F.2d 633, 641 (7th Cir. 1985) (quotation omitted). The City has the burden of proving that each position is exempt from First Amendment protection. *See Lohorn v. Michal*, 913 F.2d 327, 334 (7th Cir. 1990) ("[T]he government must demonstrate an overriding interest of vital

importance in order to justify the impairment of first amendment interests caused by politically motivated dismissals." (quotation omitted)).

According to Illinois law, the City Clerk must "keep the corporate seal . . . and all [municipal] papers . . . [that] are not given to other officers . . . . attend all meetings of the corporate authorities and keep a full record of their proceedings in the journal" and "[perform] other duties prescribed by the corporate authorities." 65 ILL. COMP. STAT. § 5/3.1-35-90. The City's Municipal Code requires the Clerk to perform a variety of ministerial tasks, including: (1) issuing routine licenses, *see, e.g.*, CODE ch. 10, § 10-8 (pet licenses), ch. 38, art. IV, div. 4, § 38-264 (food delivery truck licenses), ch. 38, art. IV, div. 6, § 38-311 (ice dealer licenses), ch. 38, art. IV, div. 10, § 38-441 (vending machine licenses); (2) issuing permits or licenses that have been approved by other City departments, *see, e.g., id.* ch. 22, art. V, § 22-132 (alarm system permits), ch. 38, art. IV, div. 9, § 38-402 (restaurant licenses), ch. 54, art. II, § 54-34 (business licenses); (3) keeping a record of all licenses and permits issued by the City, *see id.* ch. 54, art. II, § 54-42; and (4) collecting money paid to the City, *see id.* ch. 2, art. IV, div. 5, § 2-362. In fact, there seems to be only one discretionary task with which the Code vests the Clerk: investigating applications, and issuing licenses when appropriate, for private ambulances, ambulance drivers and attendants. *See id.* ch. 38, art. III, §§ 38-135, 38-153.

Qualkinbush, who served as the Clerk for nearly twenty years before becoming mayor, also described the Clerk's activities as ministerial. She said the Clerk kept the City's official records, collected money paid to the City and "sent out the notices, entered the payments [and] processed the

12

citations" for the administrative hearing system on municipal citations. (Materials Supp. Defs.' Mot. Summ. J., Ex. G, Qualkinbush Dep. at 18-20.)

The City has identified no statute or ordinance that provides the Clerk with input into the City's policy-making process or substantial discretion in determining how those polices will be executed. It may be that such legal authority exists or that the Clerk, in practice, has significant involvement in the determination of City policy. But the City has offered no such law or facts. Thus, on this record, the Court cannot conclude that the Clerk position is exempt from First Amendment protection.

The situation is different for the director position. It is undisputed that the job has never been filled. (*See* Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 53.) As a result, there is no evidence about the duties actually performed by the director. There is, however, a description of the job in the Code. In relevant part, it says:

> The director of the health center and youth and family services shall perform such duties as are necessary to the end that the purposes and policies of the mayor and city council shall be faithfully and efficiently administered and carried out in regard to those services necessary to promote the general welfare, conduct and assistance regarding the youth of the city. The director shall utilize the services and coordinate the activities of the health, youth and family services department with the police department and all public and private agencies necessary to implement a complete program regarding youth and related activities, including but not limited to drug prevention, recreation and counseling.

CODE ch. 2, art. VI, div. 5, § 2-765. That job description gives the director wide latitude in implementing City policy. Because the Code vests the director with "meaningful input into . . . decisionmaking on issues where there is room for principled disagreement" on implementing the City's policy goals, the position is exempt. *Tomczak*, 765 F.2d at 641 (quotation omitted).

Defendants are entitled to judgment as a matter of law on plaintiff's claims that they denied her the director job because of her political beliefs.

That leaves the legislative clerk position. The City does not offer, and the Court could not find, any statute or ordinance setting forth the duties of this position. It is undisputed, however, that the legislative clerk was subordinate to the City Clerk and the Deputy Clerk (Materials Supp. Defs.' Mot. Summ. J., Ex. G, Qualkinbush Dep. at 24), had no management authority (*id.* at 25-27) and was a member of the Teamsters Union (*see* Pl.'s Mem. Law Resp. Mot. Summ. J. at 7 (stating that "[plaintiff] was a line union employee")). It is also undisputed that the legislative clerk's duties were entirely ministerial. (*See id.* (stating that "[plaintiff's] duties were, at best, ministerial"); Materials Supp. Defs.' Mot. Summ. J., Ex. F, Dooley Dep. at 60-61 (stating that legislative clerk prepared meeting minutes, made packets of materials for the aldermen for Council meetings, followed aldermanic instructions for ensuring that services were provided to their wards and notified the media of Council meetings).) Defendants have offered no factual or legal support for the notion that the legislative clerk had any input into City policy-making or implementation. Therefore, the Court concludes that the clerk does not.

That is not the end of the matter, however. To proceed to trial, plaintiff must also show that she engaged in a protected political act and that the "act was a substantial or motivating factor" in defendants' decisions not to appoint her Clerk and to abolish the legislative clerk position. *Roger Whitmore's Auto. Servs., Inc. v. Lake County*, 424 F.3d 659, 668-69 (7th Cir. 2005). There is no question that plaintiff's decision not to support Qualkinbush's candidacy is protected activity. *See Elrod v. Burns*, 427 U.S. 347, 356 (1976) (stating that "political belief and association constitute the core of those activities protected by the First Amendment"). Thus, the only remaining question is

14

whether there is evidence to support the inference that defendants' hiring decisions were motivated by plaintiff's politics.

The answer is yes. Plaintiff says that when Qualkinbush told her she would not be appointed Clerk she also said that plaintiff would have been "taken care of" if she had supported Qualkinbush's mayoral candidacy. (Materials Supp. Defs.' Mot. Summ. J., Ex. D, Wilhelm Dep. at 49-56.)[9] Two weeks later, plaintiff says, Dooley told her that Qualkinbush had decided to eliminate the legislative clerk position. (*Id.* at 56.) Given that evidence, and defendants' failure to proffer anything to suggest that defendants would have made the same decisions even if she had supported Qualkinbush,[10] plaintiff has created a genuine issue for trial on her claim that she was denied the Clerk position and removed from the legislative clerk position because of her political beliefs.

---

[9] Defendants deny that Qualkinbush made any such statement. (*See* Defs.' Resp. Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 21.) But for the purposes of this motion, we must resolve this factual dispute in plaintiff's favor.

[10] Defendants contend that the legislative clerk position was eliminated pursuant to Qualkinbush's directive that every department reduce its staff by one. In support of that assertion, defendants offer an April 2005 affidavit Qualkinbush submitted in an unrelated matter. (*See* Materials Supp. Defs.' Mot. Summ. J., Ex. H.) In the affidavit, Qualkinbush lists various jobs that the City eliminated during "[her] tenure as Mayor." (*Id.* ¶ 9.) That statement does not support the assertion that the legislative clerk job was just one of a number of City positions abolished in November 2003 for financial reasons.

## Conclusion

For the reasons stated above, defendants' motion for summary judgment [doc. no. 57] is granted in part and denied in part. There is no genuine issue of material fact on plaintiff's claims that defendants violated her First Amendment rights by: (1) harassing her because of her speech or political beliefs; (2) failing to appoint her to the director job because of her speech or political beliefs; and (3) abolishing the legislative clerk position and failing to appoint her to the City Clerk job because of her speech. Because defendants are entitled to judgment as a matter of law on those claims, their motion for summary judgment on them is granted. In all other respects, defendants' motion is denied. The parties' motions to strike [doc. nos. 87, 89 ] are stricken as moot. The claims plaintiff asserts against Qualkinbush in her official capacity are dismissed as redundant of her claims against the City. Plaintiff's Title VII claims and her claims that defendants failed to appoint her to the City Clerk job and abolished the legislative clerk job because of her political beliefs are the claims that remain for trial. The parties should be prepared to set dates for filing the final pretrial order and for trial at the next status hearing.

**SO ORDERED.**  ENTERED: 1/9/06

HON. RONALD A. GUZMAN
**United States District Judge**